COREY DAVID TREAS      *      NO. 2020-CA-0050

VERSUS      *

CHANTAL ELIZABETH      *      COURT OF APPEAL
KOERNER      FOURTH CIRCUIT

     *

     STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2017-00714, DIVISION "D"
Honorable Nakisha Ervin-Knott, Judge
* * * * * *
**Judge Edwin A. Lombard**
* * * * * *

(Court composed of Judge Edwin A. Lombard, Judge Joy Cossich Lobrano, Judge
Rosemary Ledet)

*LOBRANO, J., CONCURS IN THE RESULT*

Karen M. Dicke
LEWIS, BRISBOIS, BISGAARD & SMITH, L.L.P.
400 Poydras Street, Suite 1300
New Orleans, LA 70130


       COUNSEL FOR PLAINTIFF/APPELLEE


Louis R. Koerner, Jr.
KOERNER LAW FIRM
1204 Jackson Avenue
New Orleans, LA 70130-5130


       COUNSEL FOR DEFENDANT/APPELLANT




       **JUDGMENT VACATED; REMANDED**

       **JULY 15, 2020**

EAL

RML

The Appellant, Chantal Koerner, seeks review of the September 13, 2019 judgment of the district court, granting in part the motion to dismiss or motion to compel of the Appellee, Corey Treas, and ordering Ms. Koerner pay attorney's fees and costs. Finding that the district court erred in prematurely granting the motion to compel without first ruling upon Mr. Treas' pending motion for in camera inspection of medical records of Ms. Koerner, we vacate the judgment and remand this matter to the district court for further proceedings.

## Facts and Procedural History[1]

The parties were involved in a romantic relationship. After the relationship ended, Mr. Treas filed a petition to partition property he co-owned with Ms. Koerner. In response to the petition to partition, Ms. Koerner included an amended

---

[1] The parties have been before this Court on other matters for review. The factual and procedural history enunciated herein shall be limited to the relevant issues raised in this appeal. For additional factual background and procedural history, see *Treas v. Koerner*, 19-0390 (La. App. 4 Cir. 11/13/19), ---So.3d ---, 2019 WL 5982386.

1

reconventional demand wherein she pled an affirmative defense of domestic abuse and sought damages for physical, psychological, and emotional injuries.

Mr. Treas requested Ms. Koerner's medical records from Julie Norman, a counselor Ms. Koerner identified in her response to Mr. Treas' written discovery demands. Ms. Norman, affiliated with the New Orleans Family Justice Alliance ("NOFJA"),[2] sent Mr. Treas a letter listing the dates and length of Ms. Koerner's treatment and, in general, describing the mental health services NOFJA provided to Ms. Koerner. Thereafter, on July 18, 2018, Mr. Treas issued a subpoena duces tecum to Ms. Norman and NOFJA for the complete records. NOFJA, which also answered on Ms. Norman's behalf, refused to comply with the subpoena. NOFJA asserted that as a community shelter, the subpoena was an improper method to obtain its records on Ms. Koerner.

On December 11, 2018, Mr. Treas filed a motion for in camera inspection of NOFJA's records, citing La. Rev. Stat. 46:2124.1(D). NOFJA opposed the motion and Ms. Koerner joined in NOFJA's opposition. The district court fixed the motion for argument on February 1, 2019.

At the February 1, 2019 hearing, Mr. Treas urged the records contained potentially admissible evidence to aid in his defense against Ms. Koerner's abuse allegations. NOFJA countered that Mr. Treas' motion for in camera inspection did not allege sufficient facts, as required by La. R.S. 46:2124.1(D), to compel the

---

[2] The parties intermittently also reference the New Orleans Family Justice Alliance as the New Orleans Family Justice Center ("NOFJC"). For purposes of this opinion, the shelter shall be referenced as the New Orleans Family Justice Alliance or NOFJA.

records' production from a community shelter. Notwithstanding, NOFJA represented that it would produce the records to Ms. Koerner, if she asked, or to any other party to whom she directed their release. The hearing was then continued to allow Mr. Treas time to send additional discovery demands to Ms. Koerner so that she could directly obtain her records from NOFJA.

On February 12, 2019, Mr. Treas sent a second set of requests for production of documents to Ms. Koerner. The requests included a demand to produce "[a] copy that is certified as complete and unredacted of any and all records of any kind . . . obtained from Julie Norman and/or the New Orleans Family Justice Alliance." Ms. Koerner did not send NOFJA an authorization for her records until June 2019. Moreover, hand-written notes on the authorization stated to "limit things not relevant to the case" and to "notes relevant to the things he did and impact of that during and after." Mr. Treas later received a redacted copy of Ms. Koerner's NOFJA records.[3]

On July 1, 2019, Mr. Treas filed a motion to dismiss or motion to compel. He argued that Ms. Koerner's refusal to submit records to document her abuse claims should result in the dismissal of her reconventional demand, or alternatively, the district court should compel her to produce the unredacted medical records as they are relevant to his defense against the abuse allegations.

---

[3] Mr. Treas maintained that Ms. Koerner did not directly answer his second set of requests for production of documents. Instead, he received the redacted medical records from Certain Underwriters of Lloyd's London, an insurer that had also propounded discovery demands to Ms. Koerner in April 2019.

At the conclusion of the September 13, 2019 hearing on the motion to dismiss or compel,[4] the district court denied the motion to dismiss, reasoning that it was without authority to impose such a sanction in the absence of a prior court order directing Ms. Koerner to comply with Mr. Treas' outstanding discovery demands. However, the district court granted that part of the motion as it related to the motion to compel, ordering Ms. Koerner to produce unredacted and un-altered NOFJA records to Mr. Treas, no later than 3:00 p.m. on September 20, 2019. Additionally, the district court ordered Ms. Koerner to pay attorney's fees and costs of $250.00 for Mr. Treas' incurred expenses in bringing the motion to compel. The district court orally rendered and signed the judgment on September 13, 2019.

On September 19, 2019, Ms. Koerner filed a motion for suspensive appeal of the judgment. The following day, September 20, 2019, Mr. Treas filed a motion to dismiss ("second motion to dismiss") based on Ms. Koerner's failure to timely submit the unredacted NOFJA records as ordered by the September 13, 2019 judgment.

The district court denied Ms. Koerner's motion for suspensive appeal on September 23, 2019. Thereafter, Ms. Koerner filed for supervisory writs to this Court. Holding that the costs and attorney's fees imposed in the September 13, 2019 judgment constituted a partial, final judgment subject to an immediate appeal

_____

[4] The hearing transcript of the September 13, 2019 hearing and Mr. Treas' brief indicate Mr. Treas had also filed a motion to re-set hearing on the motion for in camera inspection which had been fixed for argument on the same day. The district court did not hear the motion to re-set because NOFJA, a party to the original motion for in camera inspection, had not been served.

4

in accord with La. Code Civ. Proc. art. 1915(A)(6),[5] this Court granted the writ application and remanded the matter to the district court to sign Ms. Koerner's suspensive appeal.

Thereafter, Ms. Koerner filed a motion to set all pending motions relative to the September 13, 2019 judgment for a contradictory hearing on November 8, 2019.[6] At the hearing, the district court determined that it no longer had jurisdiction to decide the second motion to dismiss based on this Court's remand order instructing the district court to sign Ms. Koerner's suspensive appeal.

Ms. Koerner filed a second motion for suspensive appeal, after the district court indicated Ms. Koerner had not resubmitted the previously denied motion for suspensive appeal for the court's signature. The district court granted the second motion for suspensive appeal, from the following judgments: the September 13, 2019 judgment, the October 22, 2019 order, and any adverse interlocutory judgment pertaining to the September 13, 2019 judgment. This timely appeal followed.[7]

---

[5] *See Treas v. Koerner*, 19-0872 (La. App. 4 Cir. 10/9/2019) (unpub.), *writ denied*, 19-01988 (La. 2/10/20), ___ So.3d ___, 2020 WL 1923057.

[6] In the interim, on October 10, 2019, Mr. Treas had filed an *ex parte* motion to vacate that portion of the September 13, 2019 judgment that had awarded him attorney's fees and costs. The motion to vacate also requested that the district court re-issue its September 13, 2019 order to produce the unredacted record and to grant Ms. Koerner's motion for suspensive appeal "that is subject to immediate appeal." On October 22, 2019, the district court denied Mr. Treas' motion to vacate the attorney's fees and costs award. However, the district court granted the requests to re-issue its order to produce the unredacted records as mandated by the September 13, 2019 judgment and that portion of Ms. Koerner's suspensive appeal subject to immediate appeal.

[7] The district court also signed a motion for devolutive appeal of the September 13, 2019 judgment filed by Ms. Koerner on November 4, 2019.

## Assignments of Error

Ms. Koerner raises four assignments of error on appeal:

(1) the district court improperly granted Mr. Treas' motion to compel before ruling on Mr. Treas' pending motion for in camera inspection, as required by La. Rev. Stat. 46:2124.1;

(2) Mr. Treas failed to prove that the unredacted medical records he sought were relevant;

(3) Ms. Koerner's medical records were privileged under La. Code Evid. art. 510; and

(4)  (the district court's rulings demonstrated evident hostility which calls for reassignment of the trial judge.

Our review of the alleged errors reveals that a determination of whether the district court prematurely granted Mr. Treas' motion to compel before ruling on the pending motion for in camera inspection is dispositive of this matter. Thus, we first address this issue.

## Standard of Review

A trial court is vested with broad discretion in ruling on discovery matters. *Channelside Services, LLC v. Chrysochoos Group, Inc.*, 15-0064, p. 8 (La. App. 4 Cir. 5/13/16), 194 So.3d 751, 756 [citation omitted]. Appellate courts shall not disturb such rulings absent an abuse of that discretion. *Id.*

## Motion for In Camera Inspection

Ms. Koerner asserts that La. Rev. Stat. 46:2124.1 required the district court to act on Mr. Treas' motion for in camera inspection before it granted the motion to compel. La. Rev. Stat. 46:2124.1, entitled *Privileged communications and records*, provides, in relevant part, the following.

6

A. As used in this Section, the following terms shall have the following meanings:

(1) "Community shelter" means a community shelter or other program established in accordance with R.S. 46:2124.

(2) "Privileged communication" means a communication made to a representative or employee of a community shelter by a victim. It also means a communication not otherwise privileged made by a representative or employee of a community shelter to a victim in the course of rendering services authorized by R.S. 46:2124.

(3) "Victim" means a victim or potential victim of an act of family or domestic violence and his or her children.

B. Except as otherwise provided in Subsection D, no person shall be required to disclose, by way of testimony or otherwise, a privileged communication or to produce under subpoena, any records, documentary evidence, opinions or decisions relating to such privileged communication.

(1) In connection with any civil or criminal proceeding.

(2) By way of any discovery procedure.

C. The records relating to a privileged communication of a community shelter or any other agency or department shall not be public records.

D. The prosecuting attorney or any other person who is a party in a civil proceeding . . . may petition the court for an in-camera inspection of the records of a privileged communication concerning such person. The petition shall allege facts showing that such records would provide admissible evidence favorable to the person . . . If the court determines the person is entitled to all or any part of such records, it may order production and disclosure as it deems appropriate.

The parties herein do not dispute that Ms. Koerner meets the legal definition

of "victim" and that NOFJA qualifies as a "community shelter" under La. Rev.

Stat. 46:2124.1. Hence, Ms. Koerner reiterates that inasmuch as La. Rev. Stat. 46:2124.1 imposes specific procedures for the production of medical records or any privileged communications between a community shelter and a victim, the district court abused its discretion in ordering the production of the NOFJA records before conducting an in camera inspection.

Contrariwise, Mr. Treas asserts that the general discovery provisions outlined in La. Code Civ. Proc. art. 1422, *et seq.*, vested the district court with the discretion to compel the production of Ms. Koerner's unredacted medical records inasmuch as Ms. Koerner's domestic abuse allegations made the records relevant to her case and Mr. Treas' defense. In particular, Mr. Treas relies on La. Code Civ. Proc. art. 1422, which provides, in part, the following:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location, of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. . .

Upon review of the two statutory schemes, we find merit to this assigned error. As a general rule of statutory construction, a specific statute controls over a broader, more general statute. *Channelside*, 15-0064, p. 17, 194 So.3d at 761. Accordingly, where two statutes deal with the same subject matter, in the event of a conflict, the specific statute prevails over the statute more general in nature. *Id.*, 15-0064, pp. 17-18, 194 So.3d at 761. Here, La. Rev. Stat. 46:2124.1(D), enacted as part of the Protection from Family Violence Act ("PFFVA"), was specifically crafted to meet the legislature's stated purpose to develop strategies and services, such as counseling, to reduce and treat the trauma of family violence. See La. Rev.

8

Stat. 46:2121(A).[8] Thus, in balancing the general provisions governing discovery and La. Rev. Stat. 46:2124.1, we conclude that as the more specific statute, La. Rev. Stat. 46:2124.1(D), takes precedence in determining the proper procedures to compel the production of a victim's community shelter records.

La. Rev. Stat. 46:2124.1(D) imposes the following three criteria for a party to civil litigation to compel the disclosure of the victim's community shelter communications or records: the requesting party must petition the district for an in camera inspection of the records; the petition shall allege facts that show the records would provide admissible evidence favorable to the petitioner; and the district court may order the production and disclosure of the records as it deems appropriate after it determines the petitioner is entitled to all or some of the records.

In the matter *sub judice*, Mr. Treas properly moved for an in camera inspection of Ms. Koerner's records as required by La. Rev. Stat. 46:2124.1(D). However, the district court failed to act on the merits of the motion. It made no finding as to whether Mr. Treas' motion for in camera inspection alleged facts constituting favorable admissible evidence which would have necessitated that the district court conduct an in camera inspection and compel the production of the records. As between community shelters and victims, La. Rev. Stat. 46.2124.1(B)

---

[8] La. Rev. Stat. 46:2421(A) provides, in relevant part, the following:

> The legislature hereby finds and declares that there is a present and growing need to develop innovative strategies and services which will reduce and treat the trauma of family violence. Available studies documenting police statistics indicate that thousands of persons in this state are regularly beaten, tortured, and, in many cases, killed by spouses or persons with whom they are living in a primary relationship. These studies further indicate that victims of family violence come from all socioeconomic classes and ethnic groups, though it is the poor who suffer most from family violence, since it is less likely that they have immediate access to private counseling and shelter for themselves and their children. . .

9

specifies that no person shall be compelled to disclose records of privileged communications in any civil proceeding, by way of any discovery procedure, except as provided for Rev. Stat. 46:2124.1(D). Therefore, we find the district court abused its discretion in prematurely granting Mr. Treas' motion to compel and ordering the production of the unredacted NOFJA records without first conducting an in camera inspection.

We pretermit discussion of Ms. Koerner's remaining assigned errors, having found the district court abused its discretion in ordering the production of Ms. Koerner's NOFJA records before disposing of the outstanding motion for in camera inspection.

## DECREE

For the foregoing reasons, we vacate the district court's September 13, 2019 judgment and remand the matter to the district court to conduct a hearing and to decide the merits of Mr. Treas' motion for in camera inspection.

**JUDGMENT VACATED;
REMANDED**